WHITE STAR BUS LINE, INC., Petitioner and Appellant, *v.* WORKMEN'S RELIEF COMMISSION, Respondent and Appellee.

No. 4126.   Argued March 29, 1927.—Decided April 7, 1927.

*Salvador Mestre* for the appellant.   *Attorney General. George C. Butte, C. Llauger Díaz* and *Emilio Aldrey* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Appellant is a corporation engaged in the operation of a line of motor vehicles for the transportation of passengers. In reporting to the Workmen's Relief Commission the wages paid by appellant to its employees during a specified period preceding the date of said report, all sums paid to the chauffeurs in charge of the vehicles used in such business were excluded, upon the ground that the drivers in question under the terms of. the contracts in writing entered into by them with appellant were not employees of appellant, but partners in the business.

The ruling of the commission and the order of the district court upon certiorari to review that ruling were adverse to the contention of appellant.

The brief for appellant is based primarily upon the case of *Colón* v. *Workmen's Relief Commission*, 34 P.R.R. 94.

The *Colón Case*, as clearly appears from the opinion of the court, was a border line case. The court below had accepted as true the testimony of one of the partners tending to show a partnership. The only question involved was as to whether or not this testimony was sufficient to sustain the judgment. This court, after a careful analysis of the facts stated by the witness in question, found therein no adequate reasons for disturbing the conclusion reached first by the Workmen's Relief Commission and later by the district court.

Colón and Teissonier, the witness above mentioned, formed a partnership for the manufacture and sale of fireworks. The factory was installed under a shed or shelter consisting of a zinc roof supported by four posts. The proposition made by Teissonier to Colón and accepted by him was the following:

"Now I am going to start a factory out there; if you wish to come with me, I shall make you a partner: I shall give you a certain percentage of the profits and two dollars a day."

That Colón participated in the management of the business and that the profits already referred to were net profits is shown by the following extract:

"On or about the 3rd of December, 1923, Arturo Colón was working with him as his partner in the manufacture of firecrackers. Colón contributed nothing to the partnership. The witness furnished the materials. He says that Colón was a partner because he gave him 15 per cent of the profits. The factory was situated on lands of Manescau and he sold the firecrackers. When he was at the factory he gave orders 'to everybody; when he left Arturo Colón there Colón was in charge.' There were two workmen in the factory. After the firecrackers were sold he deducted the expenses and gave Colón 15 per cent of the profits."

Colón and Teissonier worked together in the erection of the shelter under which the business was to be carried on and worked side by side in the little factory. The explosion which caused the death of Colón carried away the table at which Teissonier was accustomed to work.

The opinion concludes in part as follows:

"It is difficult to classify the particular contract under consideration. Nothing was put in writing. We can deduce the intention of the parties only from the statements of one of them. The fact that the amount of Colón's wages was fixed, the superior position of Teissonier in the management of the business, the sale of the firecrackers and the liquidation of the profits, suggest a contract for the letting of services for hire. On the other hand, the insignificance of the business, graphically shown from the description of the premises where the firecrackers were made, Teissonier's offer to Colón and his acceptance, as described by the former, and the fact that Teissonier and Colón worked together in the same place, do not exclude the idea of a partnership to which Teissonier contributed property and labor and Colón only his labor, receiving daily wages because of his poverty, even though Teissonier appears as a man of greater means and initiative than Colón and as the real head of the enterprise. When partnerships are made those partners who have to do active work are generally assigned salaries and this does not change their status as partners.

"Under these circumstances, the commission and the district court having in turn concluded that there was a partnership, we do not feel inclined to interfere with that conclusion in the absence of a strong showing that it is erroneous."

In the instant case we are not confronted with the verbal statement of a surviving partner, accepted as true first by the commission and later by the district court and held by both to establish the existence of a partnership. Here we have a written contract deliberately executed by the White Star Bus Line, Inc., and relied upon by it as defining the terms, conditions and character of the agreement existing between the said corporation and the drivers of its motor vehicles. This document has been construed first by the

Workmen's Relief Commission and later by the district court to be a hiring of services, not a partnership agreement.

The instrument in question is not entitled as articles of co-partnership nor so characterized at any time in the writing itself. No mention whatever is made either of partners or of a partnership. A copy in the record reads thus:

"The White Star Bus Line, Inc., a corporation organized under the laws of Porto Rico, represented by its President, Adolfo Valdés, party of the first part.

"And Ventura Martínez Díaz, of age a chauffeur and resident of San Juan, party of the second part.

"By this contract set forth:

"FIRST: The White Star Bus Line, Inc., party of the first part, operates a line of auto-busses between San Juan, Río Piedras, Martín Peña and the Park, where it runs a number of said vehicles.

"SECOND: The party of the second part is authorized to act as chauffeur in the Island of Porto Rico under license and badge No. 895.

"THIRD: The party of the second part agrees to take charge and drive one of the motor vehicles of the White Star Bus Line (to be determined by the said company) during the hours of the day and night to be fixed by the company, and agrees to exercise the highest degree of care and diligence in running said vehicle and to comply with all the rules and orders received from the party of the first part, the White Star Bus Line Co.

"FOURTH: The party of the first part agrees to deduct and deliver from the fares (*beneficios*) earned by the bus driven by the party of the second part while being so driven 20% of the gross receipts which shall go (*corresponderán*) to the party of the second part for his services as a driver of said vehicle, and this payment will be made daily at the end of the turn.

"FIFTH: This contract has no fixed term and may be rescinded and terminated by either party at any time that such party may see fit, neither of the parties being entitled to damage as a result of such action by the other party.

"SIXTH: The party of the second part shall contribute nothing but his personal services and shall have no other rights than to drive the vehicle, the management and control thereof remaining in the exclusive hands of its owner, the White Star Bus Line, Inc.

"Subscribed in duplicate, in San Juan, P. R., on the second of September, 1925. Signed: A. Valdés, President. Ventura Martínez Díaz."

Obviously the driver was an employee and not a partner. He had nothing whatever to do with the management and control of the business in which the corporation was engaged. He had no participation in the net profits derived from that business. He was subject to dismissal at any time and was under the absolute direction and control of the corporation at all times. He was to be paid as compensation for his labor and services at the end of each day, or working period fixed by the company, whether during the day or night, a percentage of the gross receipts derived from the operation of the vehicle driven by him.

Beyond this feature of compensation upon a percentage basis the contract now under consideration has practically none of the essential elements of an agreement of partnership and in its more substantial aspects bears the unmistakable earmarks of an intention to create the relationship of master and servant. As pointed out in the *Colón Case*, the mere fact that wages are paid in the form of a commission or percentage is not conclusive upon the question as to the existence of a partnership relation which is a matter of intention; and such intention, when ascertained in the usual way, must control.

The judgment appealed from must be affirmed.